MAYER BROWN LLP
DALE J. GIALI (SBN 150382)
dgiali@mayerbrown.com
DANIEL D. QUEEN (SBN 292275)
dqueen@mayerbrown.com
350 South Grand Avenue
Los Angeles, California 90071
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

ADAM HUDES
(admitted *pro hac vice*)
ahudes@mayerbrown.com
STEPHEN COHEN
(admitted *pro hac vice*)
scohen@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Attorneys for Plaintiffs Nestlé USA, Inc. and Société
des Produits Nestlé S.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NESTLE USA, INC. and
SOCIÉTÉ DES PRODUITS
NESTLE S.A.,

Plaintiffs,

vs.

BEST FOODS LLC,

Defendant.

Case No. 2:21-cv-02659-MCS-JPR

**FIRST AMENDED COMPLAINT FOR:**

**(1) TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114(1)**
**(2) FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)**
**(3) TRADEMARK DILUTION, 15 U.S.C. § 1125(c)**
**(4) TRADEMARK DILUTION, CAL. BUS. PROF. CODE § 14247**
**(5) UNFAIR COMPETITION, CAL. BUS. PROF. CODE §§ 17200 ET SEQ.**
**(6) FALSE ADVERTISING, CAL. BUS. PROF. CODE §§ 17500 ET SEQ.**
**(7) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

**JURY TRIAL DEMAND**

Plaintiffs Nestlé USA, Inc. and Société des Produits Nestlé S.A., by their attorneys, bring this complaint against defendant Best Foods LLC ("Best Foods" or "Defendant") as follows:

## NATURE OF ACTION

1. This action arises from Best Foods' unauthorized distribution and sale of Nestlé food and beverage products in the United States that were intended for sale in Mexico.

2. Plaintiff Nestlé USA, Inc. ("NUSA") sells Nestlé food and beverage products throughout the United States. NUSA's corporate affiliate, Plaintiff Société des Produits Nestlé S.A. ("SPN"), is the owner of Nestlé's trademarks in the United States, and NUSA was granted an exclusive license of those trademarks and their associated rights. Accordingly, NUSA is responsible for the marketing, labelling, and distribution of Nestlé products in the United States.

3. NUSA takes that responsibility seriously by ensuring that the contents, packaging, and labelling of Nestlé products sold in the United States comply with U.S. laws and regulations; by subjecting its products to rigorous quality control standards; and by providing high-quality post-sale services to its customers. Those practices correspond with the preferences of U.S. customers, who consider products to be higher quality when they comply with U.S. laws and regulations, are formulated to match U.S. consumer tastes, and feature the post-sale services that NUSA provides. These activities have ensured continued goodwill for Nestlé trademarks in the United States, which in turn allows NUSA to profit from the sale of Nestlé products to U.S. consumers. Best Foods is a consummate "free rider," unfairly profiting off of the value of Nestlé's trademarks and the investment that NUSA and its authorized distributors have made in creating consumer demand for Nestlé products.

4. Best Foods is a California-based specialty grocery importer and wholesaler that distributes Hispanic brands to independent retailers in the United

States, including products manufactured by Nestlé Mexico that are intended for sale *in Mexico*. However, Best Foods is *not* an owner or licensee of Nestlé trademarks in the United States, and neither NUSA nor SPN have authorized Best Foods to sell Nestlé-trademarked products. Trademarked products in a market that are imported and sold in this manner without consent of the trademark owner are often referred to as "parallel imports" or "grey market goods."

5.      NUSA often sells its own version of the Nestlé Mexico products to U.S. consumers using the same Nestlé trademarks. However, customers and consumers purchase the grey market products sold by Best Foods without realizing that they are not authorized by NUSA or SPN for resale in the United States. Despite being sold under the same brands, using the same Nestlé trademarks, and having similar appearances, the Nestlé Mexico products sold by Best Foods are materially different from their corresponding NUSA Products (as defined below).

6.      While these differences may not matter to Best Foods, they can have serious repercussions for NUSA, NUSA's authorized distributors, retailers, and consumers. The grey market products that Best Foods sells in the United States are not properly labeled in compliance with the Food, Drug, and Cosmetic Act and the Food & Drug Administration's ("FDA") regulations and guidance. For instance, these grey market products often have Spanish-only labels that contain different nutritional information than the NUSA version of those products. Moreover, the grey market products may contain formulations not intended for the United States market, and/or are not subject to NUSA's same quality control standards and post-sale services. Rather, the grey market products are specially formulated and labeled for consumption in foreign markets; they are manufactured in accordance with foreign regulatory requirements, procedures, and quality controls; and they are not subject to post-sale services in the United States. As a result of Best Foods' actions and the resulting consumer confusion, NUSA and its authorized distributors in the United

States have lost retail customers. Best Foods' actions have harmed NUSA, its business partners, and its customers.

7.      Accordingly, NUSA and SPN bring this action to recover damages due to Best Foods' unlawful distribution and sale of contraband food and beverage products, and to prevent Best Foods' further distribution and sale of such products. Plaintiffs seek this relief through claims under the federal Lanham Act, California's Business and Professional Code, and California common law.

### THE PARTIES, JURISDICTION, AND VENUE

8.      Plaintiff NUSA is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1812 N. Moore Street in Arlington, Virginia. NUSA is an exclusive licensee for Nestlé products in the United States, where it is responsible for the marketing and distribution of those products.

9.      Plaintiff SPN is a corporation organized and existing under the laws of Switzerland, with its principal place of business located at Entre-deux-Villes, 1800 Vevey Switzerland. SPN is the registered owner of Nestlé's trademarks in the United States.

10.     Defendant Best Foods is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 6423 Bandini Blvd. in Commerce, California. Best Foods describes itself as a specialty grocery importer and wholesaler of Hispanic food products.

11.     This Court has personal jurisdiction over Best Foods because Best Foods' principal place of business is located in this judicial district, it regularly transacts business in this judicial district, and because a substantial portion of the acts and omissions by Best Foods giving rise to Plaintiffs' claims and the damages and injuries complained of occurred in this judicial district.

12.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and general principles of ancillary and pendent jurisdiction, as well as

4

1  under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount

2  in controversy exceeds $75,000.

3      13.   Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(b)

4  and (c).

5                            **FACTUAL ALLEGATIONS**

6  *NUSA, SPN, and NUSA Products*

7      14.   As a major multinational company—indeed, the largest food and

8  beverage company in the world—Nestlé subsidiaries operate in many different

9  countries. In North America, those operating subsidiaries include (among others)

10  NUSA and Nestlé México, S.A. de C.V. ("Nestlé Mexico"). NUSA and Nestlé

11  Mexico are responsible for the marketing, distribution, and sale of Nestlé products in

12  the United States and Mexico, respectively. NUSA sells hundreds of Nestlé food and

13  beverage products (the "NUSA Products") in the United States.

14      15.   NUSA devotes substantial effort and resources to ensure that NUSA

15  Products are based on the preferences of United States consumers, are safe to

16  consumers, and comply with U.S. laws and regulations. Before the distribution and

17  sale of NUSA Products, NUSA ensures that NUSA Products are properly

18  manufactured, packaged, and labeled to their intended specifications/formulations.

19  After the NUSA Products are distributed, NUSA continues to monitor the market by

20  receiving consumer inquiries, tracking and investigating complaints, addressing

21  spoilage issues, and performing necessary actions in response to such issues,

22  including by conducting recalls or initiating legal proceedings.

23      16.   NUSA sells its Products directly to retailers and through a network of

24  authorized distributors that distribute NUSA Products throughout the United States,

25  including in California. Distributors enter into a contractual agreement with NUSA

26  in order to distribute NUSA Products. These agreements provide NUSA's authorized

27  distributors with certain rights and benefits—including, in some instances, the

28  exclusive right to distribute NUSA products within a designated region or territory.

By carefully evaluating and negotiating with its authorized distributors, NUSA ensures that its products are distributed by business partners that are similarly invested in developing and safeguarding the goodwill associated with the NUSA Products. Where NUSA's distributors fail to provide the high-quality services that NUSA expects, NUSA may take corrective measures.

17.    NUSA's sale of the Products in the United States has been tremendously successful because of its efforts to ensure the high quality of those Products, as well as its substantial investment in the marketing and promotion of NUSA Products to consumers.

18.    NUSA is responsible for its own marketing, manufacturing, and sales activities in the United States related to the NUSA Products. NUSA's decisions are made by its own, separate corporate officers and directors, and its operations are run by its own officers and employees. NUSA maintains separate directors, separate payroll, and separate corporate records from affiliated entities.

19.    SPN does not engage in any marketing, manufacturing, or sales activities in the U.S. or Mexico. SPN's decisions are made by its own, separate corporate officers and directors. SPN maintains separate directors, separate payroll, and separate corporate records from affiliated entities.

***Trademarks for the NUSA Products***

20.    Each of the NUSA Products is marketed under a brand name that is subject to a trademark registered at the United States Patent and Trademark Office ("USPTO"). The registered owner of each trademark is SPN, which has entered into an agreement with NUSA granting NUSA an exclusive license to the rights associated with each trademark in the United States, including rights to enforce each trademark in the United States.

21.    The trademarks owned by SPN and registered with the USPTO (the "Nestlé Marks") that are relevant here include:

(a)     <u>Nestlé.</u> Since at least 1878, NUSA or its predecessor in interest has continuously used the trademark "Nestlé" on a variety of NUSA Products. The "Nestlé" mark has been registered at the USPTO under various registration numbers, including 0188089, 0380007, 1105743, 1521476, 1534496, 1622720, 2089943, 2081154, 2121177, 2221586, 3343565, 3716317, 3598791, 4962410, and 4855611.

(b)     <u>Nescafé.</u> Since at least 1939, NUSA or its predecessor in interest has continuously used the trademark "Nescafé" on a variety of NUSA Products. The "Nescafé" mark has been registered at the USPTO under various registration numbers, including 0379117, 0843369, 1152592, 2951916, and 4879308.

(c)     <u>Good Food, Good Life</u>. Since at least 2011, NUSA or its predecessor in interest has continuously used the trademark "Good Food, Good Life" on a variety of NUSA Products. The "Good Food, Good Life" mark has been registered at the USPTO under various registration numbers, including 4270568 and 4270564.

(d)     <u>La Lechera.</u> Since at least 1988, NUSA or its predecessor in interest has continuously used the trademark "La Lechera" on a variety of NUSA Products. The "La Lechera" mark has been registered at the USPTO under various registration numbers, including 1557025, 4314364, and 5186726.

22.     The Nestlé Marks are inherently distinctive, and have acquired a high degree of fame in the minds of U.S. consumers through consistent use over decades, widespread and substantial advertisement and promotion by NUSA, and tremendous commercial success of the NUSA Products nationwide. Customers throughout the United States recognize the Nestlé Marks as representative of the high quality NUSA Products sold by NUSA.

23.    NUSA has spent many millions of dollars annually for products bearing the Nestlé Marks to appear in magazines and newspapers, on billboards, in television commercials, in stores, and on the Internet. These advertisements are regularly seen by consumers in every state, and the NUSA Products are offered for sale by nearly every major grocery provider across the country.

24.    As a result of these efforts, the Nestlé Marks are famous throughout the United States, including in California. The goodwill associated with the Nestlé Marks are of enormous value to NUSA and SPN, and are associated with high-quality food and beverage NUSA Products. Nescafé, for example, which has been popular in the United States since World War II, accounts for approximately one-fifth of all coffee served around the world, and has an estimated brand value of $17.9 billion.[1] Nescafé is ranked thirty-sixth on Interbrand's 2017 list of Best Global Brands.[2] Similarly, according to Brand Finance's Global 500 2017 report, the Nestlé brand ranked as the sixty-first most valuable brand globally, with a brand value of more than $19 billion.[3] The Nestlé Marks became famous in the U.S. and globally long before Best Foods commenced its illegal and infringing activities that Plaintiffs complain of herein.

***Best Foods' Wrongful Distribution and Sale of Nestlé Mexico Products in the United States***

25.    Defendant Best Foods was formed in 1992, in California, and its current registered principal business office is in Commerce, California. Best Foods describes

---

[1]    Forbes, "Nescafe," available at http://www.forbes.com/companies/nescafe/#58a442d65854.

[2]    Interbrand, "Best Global Brands 2017 Rankings," available at http://interbrand.com/best-brands/best-global-brands/2017/ranking/. "Interbrand is a global brand consultancy, and publisher of the highly influential annual Best Global Brands." *See* Interbrand, "About," available at: http://interbrand.com/about/.

[3]    Brand Finance, "Global 500 2017," February 2017, available at http://brandfinance.com/images/upload/global_500_2017_locked_website.pdf.

itself as being a "specialty grocery importer and wholesaler" that offers "well known Hispanic brands to the United States' market."[4]

26.    Among the food and beverages that Best Foods sells are products manufactured by Nestlé Mexico.

27.    Neither NUSA nor SPN have authorized Best Foods to distribute or sell Nestlé products in the United States. NUSA and SPN also have not authorized Best Foods to use the Nestlé Marks in the United States in any manner.

28.    Nevertheless, Best Foods is in the business of acquiring products manufactured by Nestlé Mexico that are intended for sale outside the United States (the "Nestlé Mexico Products") and distributing and selling them to retailers and other customers in the United States.

29.    Neither NUSA nor SPN have any involvement in the manufacturing, sale, or distribution of the Nestlé Mexico Products.

30.    The Nestlé Mexico Products that Best Foods sells include, among others:

- Nescafé coffee products, such as Nescafé Clásico, Nescafé Clásico Decaf, and Nescafé Café de Olla; and
- Milk and cream products, such as Nestlé La Lechera La Original and Nestlé Media Crema.

31.    Best Foods regularly markets grey market Nestlé products to customers in the United States through its website, where a number of Nestlé Mexico Products are available for purchase and shipment in the U.S.[5] It is apparent from the product images on its website that Best Foods is advertising Nestlé Mexico Products, based

---

[4]    *See*   http://www.bestfoods.la/en/?option=com_content&view=article&id=21 (website of Defendant Best Foods, accessed September 29, 2021).

[5]    *See,   e.g.*   http://www.bestfoods.la/en/grocery/baking/media-crema-table-cream-24-225g-mxn-detail.html (product listing for Nestlé Mexico Media Crema, accessed      September      29,      2021);      http://http://www.bestfoods.la/en/beverages/coffee/nescafe-clasico,-12-120gm-mxn-detail.html (product listing for Nestlé Mexico Nescafé Clásico, accessed September 29, 2021).

on the Spanish language and metric weight on the front of the product labels. Best Foods advertises these products for sale using the Nestlé Marks, along with their accompanying images.

32.     The Nestlé Mexico Products distributed by Best Foods in the United States, as explained further below, are materially different from the corresponding NUSA Products marketed under the same brand. For instance, they use Spanish-only labels with nutritional information and metric units that are inconsistent with FDA regulations; they have in some instances different formulations; and they are subject to different post-sale services.

***Material Differences Between NUSA Products and Nestlé Mexico Products Sold by Best Foods***

33.     For each of the Nestlé Mexico Products sold by Best Foods, there is a similar but materially different NUSA Product that is actually intended for sale in the United States. The Nestlé Mexico Products sold by Best Foods use many of the same Nestlé Marks that appear on these NUSA Products. For example:

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nescafé Clásico | Nescafé Clásico |
|  |  |

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nescafé Clásico Decaf | Nescafé Decaf |
|  |  |
| Nescafé Café de Olla | Nescafé Estilo Café de Olla |
|  |  |

11

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |
|  |  |
| Nestlé Media Crema Table Cream | Nestlé Media Crema |
|  |  |

34.   Despite their use of the same Nestlé Marks and similarities in appearance, there are material differences between the NUSA Products and the Nestlé Mexico Products concerning, among other things, the information contained

on the labels, product composition/formulation, and post-sale services for the products.

Labels

35.   The Nestlé Mexico Products sold by Best Foods are labeled in Spanish while the NUSA Products are labeled in English. For example:

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |
|  |  |

36.   This Spanish-language-only labelling of the Nestlé Mexico Products is a violation of FDA regulations that require products sold in the United States to be labeled in English and allow labeling in a foreign language such as Spanish only when all required label elements are provided in both English and Spanish. *See* 21 CFR 101.15(c)(2).

37.   Many of the labels for the Nestlé Mexico Products refer to a website affiliated with Nestlé Mexico, recetasnestle.com.mx, whereas the corresponding labels for the NUSA Products refer to websites affiliated with NUSA, such as cocinandoconnestle.com and Nestleusa.com. Likewise, many of the labels for the Nestlé Mexico Products provide a customer service line affiliated with Nestlé Mexico, whereas the corresponding labels for the NUSA Products provide a customer service line affiliated with NUSA. For example:

FIRST AMENDED COMPLAINT; CASE NO. 2:21-cv-02659-MCS-JPR

| NUSA Product | Nestlé Mexico Product |
| --- | --- |
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |
|  |  |

The websites and customer service line identified on labels of the Nestlé Mexico Products will not allow U.S. consumers to contact the firm responsible for the Products in the event of a safety or quality concern.

38.     The Nutrition Facts Panel on the label for the NUSA Products complies with FDA regulations, which specify certain formatting for font sizes, bolding, spacing, and lines between text, as well as naming and order of nutrients listed. *See* 21 CFR 101.9(c), (d). The NUSA Products also comply with FDA regulations by providing serving sizes in appropriate units. *See* 21 CFR 101.9(b). Further, consistent with new FDA nutrition labeling regulations that went into effect on January 1, 2020, the NUSA Products' labels identify the added sugar content of the products and list calories in a designated larger font.

39.     However, the nutrition labels for the Nestlé Mexico Products are different in appearance and content from the Nutrition Facts Panels on the labels for the NUSA Products. Many of the Nestlé Mexico Products' nutritional information lacks the font sizes, bolding, spacing, lines between texts, and naming and order of nutrients mandated by FDA regulations, and/or do not provide serving sizes in the units required by FDA regulations. Further, none of the Nestlé Mexico Products identify their added sugar content or list calories in a designated larger font. In

addition, many of the Nestlé Mexico Products provide different nutritional information than the NUSA Products because they may have different formulations and/or recommended serving sizes.

| NUSA Product | Nestlé Mexico Product |
|---|---|
| Nestlé La Lechera Condensed Milk | Nestlé La Lechera La Original |
|  |  |

40.    In some cases, the Nestlé Mexico Product omits nutritional information entirely. For example, NUSA's Nescafé Café de Olla product includes nutritional information on its label, but the Nestlé Mexico version of Nescafé Café de Olla, which is sold by Best Foods in the U.S., does not:



41.    The labels for the NUSA Products identify the quantity of the NUSA Products in both U.S. Customary and metric units as required by FDA regulations. In contrast, the labels for the Nestlé Mexico Products sold by Best Foods use only metric units. For example:

Product Composition and Formulation

42.     The product compositions and formulations of the NUSA Products and Nestlé Mexico Products may also differ. For example, the NUSA and Nestlé Mexico versions of La Lechera have different fat and sugar content:

|  | Content Per Serving | |
|---|---|---|
|  | NUSA | Nestlé Mexico |
| Fat Content | 3.5g | 2g |
| Sugar Content | 22g | 23.6g |

43.     Likewise, the NUSA and Nestlé Mexico versions of Nestlé Media Crema have different fat and sugar content:

|  | Content Per Serving | |
|---|---|---|
|  | NUSA | Nestlé Mexico |
| Fat content | 4g | 3g |
| Sugar content | 0g | .6g |

Other Material Differences

44.     Beyond differences in their labelling and formulations, there are a number of additional material differences between the NUSA Products and the Nestlé Mexico Products.

45.     For example, before NUSA Products are distributed and sold in the United States, they are subject to food safety and quality assurance processes to ensure they meet the requirements of U.S. laws and regulations. Products that Nestlé Mexico manufactures for distribution in Mexico must conform to Mexico's food safety and quality standards, which are different from those in the U.S. In addition, in the event of a quality issue or a product recall involving these Mexican manufactured products, it may be difficult to trace the products and their ingredients to determine the source of the issue.

46.     NUSA also offers a number of post-sale services for the NUSA Products, including returns, spoils allowances, "scan-backs," customer service, and in-store demonstrations. These services result in a different experience for retailers and consumers of NUSA Products compared to retailers and consumers of grey market Nestlé Mexico Products distributed by Best Foods:

(a)     <u>Returns</u>: NUSA allows returns of certain NUSA Products if retailers and/or customers are dissatisfied with those NUSA Products. However, because NUSA never distributed the Nestlé Mexico Products diverted by Best Foods, retailers and customers who purchased those products will not be able to return them to NUSA, potentially damaging the customer perception of NUSA and the Nestlé Marks.

(b)     <u>Spoils Allowances and "Scan-Backs"</u>: NUSA provides certain credits to retailers for NUSA Products that have been spoiled or damaged, and for NUSA Products that have been sold at a discounted price. These credits help prevent retailers from losing money on products that are damaged or spoiled, or that remain unsold. They also encourage retailers to remove spoiled and/or damaged products from their shelves, and to offer lower prices for NUSA Products. However, NUSA cannot provide credits for Nestlé Mexico Products because NUSA did not provide those Nestlé Mexico Products to retailers in the first instance.

(c)     <u>Customer Service</u>: Retailers and consumers who have purchased NUSA Products may contact NUSA's customer service staff in the United States to address any concerns that they have about their NUSA Products, and NUSA's customer service staff can address those concerns. However, NUSA's customer service staff cannot address concerns that retailers and consumers raise about Nestlé Mexico Products that they have purchased, as NUSA had no involvement in the Nestlé Mexico Products' manufacture, labelling, distribution, or sale.

(d)     In-Store Demonstrations: When a retailer sells NUSA Products, NUSA provides certain in-store demonstrations of the NUSA Products for retailers and consumers, thereby better informing them about how to properly use the NUSA Products and encouraging further sales at those locations. However, NUSA does not provide in-store demonstrations for the Nestlé Mexico Products distributed by Best Foods. This deprives consumers of information about their purchases and dampens consumer demand.

47.     By providing these post-sale services for the NUSA Products, NUSA builds goodwill for itself, the NUSA Products, and the Nestlé Marks in the United States. However, U.S. purchasers of Nestlé Mexico Products do not enjoy those services, thereby diminishing the goodwill of the Nestlé Marks.

**Best Foods' Use of Stickers on Certain Nestlé Mexico Products**

48.     In some instances, Best Foods has distributed and/or sold Nestlé Mexico Products that include unauthorized stickers on top of the original product labels.

49.     For example, the Nestlé Media Crema La Original products being sold through retailers for whom Best Foods is a distributor include stickers on both the front and the back side of the product. The stickers that appear on this product provide some nutritional and ingredients information intended to create the impression that retailers and/or consumers are purchasing a NUSA Product and/or that the Nestlé Mexico Product complies with U.S. labeling requirements and other regulations. However, the stickers are insufficient to bring the Nestlé Mexico Product into compliance with U.S. regulations. For instance, the product's net weight declaration does not appear on the principal display (front) panel of the product, as required by 21 CFR 101.107.

50.     As another example, Best Foods has sold the Nestlé Mexico version of Nescafé Clásico with stickers purporting to provide nutritional information that fail to meet FDA requirements. For instance, under 21 CFR 101.15(c), any product that makes representations in Spanish must include all required labeling elements—

including nutritional facts and ingredients information—*both* in English and in Spanish. This requirement ensures that, when a foreign language is used to attract non-English-speaking consumers, speakers of the foreign language are able to obtain all the information the FDA deems necessary to make educated food purchasing decisions. Best Foods has violated this requirement by selling products with English-language-only nutrition labels covering the Spanish-language nutrition labels.

51.     The stickered Nescafé Clásico products sold by Best Foods also fail to comply with the FDA's regulations because their net weight declaration does not appear on the principal display (front) panel of the product, and their "Nutrition Facts" panels do not meet the necessary format and content requirements, such as appropriate hairline thickness or placement between lines of text (*see* 21 CFR 101.9(d)); font sizes, bolding, naming (*e.g.*, kcal and lipids), and order of certain nutrients do not comply with FDA regulations (*see* 21 CFR 101.9(c)); and/or serving sizes that are not appropriately calculated in common household units (*see* 21 CFR 101.9(b)).

52.     By selling products with stickers that fail to comply with the FDA's labeling requirements, Best Foods undermines the FDA's efforts to ensure that consumers make informed food choices, to facilitate price comparisons, and to prevent fraud upon consumers. Best Foods' failure to comply with federal regulations also undermines goodwill for NUSA, its products, and the Nestlé Marks throughout the United States.

### *Effects of Best Foods' Wrongful Conduct on NUSA and Its Customers*

53.     Retailers and consumers have purchased Nestlé Mexico Products sold and distributed by Best Foods under the mistaken belief that those products are NUSA Products, and/or that the distribution and sale of those products is associated with NUSA. As a result, those retailers and consumers have purchased materially different products from the ones they believed they were purchasing—products that lack the required label statements, product formulation, food safety compliance, and

post-sale services that they were expecting. This consumer confusion and resulting damage to NUSA and the goodwill associated with the Nestlé Marks is likely to continue if Best Foods' infringing activities are not stopped. This has harmed and continues to harm NUSA's goodwill and reputation, and the goodwill associated with the Nestlé Marks in the United States, resulting in enormous harm and damages to NUSA and SPN.

54.    Further, by circumventing legitimate distribution channels and quality control procedures, and by failing to provide the services that NUSA and its legitimate distributors provide to retailers and customers, in many instances Best Foods has been able to offer artificially low prices for the Nestlé Mexico Products. As a result, some retailers and consumers have purchased Nestlé Mexico Products sold in the US by Best Foods, rather than NUSA Products intended for distribution and sale in the United States. These transactions have resulted and will continue to result in substantial losses to NUSA and its authorized distributors, disruptions to NUSA's business relationships with its customers and the rights that NUSA has granted to its authorized distributors. This harm to NUSA, its business partners, and consumers will continue if Best Foods' infringing activities are not stopped.

55.    Best Foods has engaged in this unlawful conduct despite knowing that they are infringing upon NUSA and SPN's rights to the Nestlé Marks in the United States.

## **FIRST CAUSE OF ACTION**

### **Trademark Infringement, 15 U.S.C. § 1114(1)**

### **Against Defendant**

56.    Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 55 above as if fully set forth herein.

57.    NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

FIRST AMENDED COMPLAINT; CASE NO. 2:21-cv-02659-MCS-JPR

58.     In the United States, NUSA or its predecessors have used the Nestlé Marks continuously for decades—and in some cases, more than a century—to identify their goods and distinguish them from those made and sold by others by, among other things, prominently displaying the Nestlé Marks on the NUSA Products and their packaging and marketing materials.

59.     Defendant has infringed NUSA's rights to the Nestlé Marks in interstate commerce by various acts, including advertising, distributing, and offering for sale goods bearing the Nestlé Marks which were manufactured solely for the Mexican market, are materially different from the NUSA Products that NUSA sells in the U.S. market, and were not manufactured by NUSA for sale in the United States under the Nestlé Marks.

60.     Defendant's acts of infringement are likely to cause, and have caused, confusion, mistake, and deception, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendant's products, or that Defendant is associated with or related to NUSA or is authorized by NUSA to distribute or sell the NUSA Products in the United States.

61.     Defendant's acts of infringement have been committed deliberately and willfully, with knowledge of NUSA's exclusive rights and goodwill in the Nestlé Marks, and with knowledge of the infringing nature of the marks when used in connection with the diverted and unauthorized Nestlé Mexico Products. Defendant's acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive.

62.     Defendant had actual and constructive knowledge of NUSA's superior and exclusive rights in and to the Nestlé Marks in the United States prior to Defendant's adoption and use of the Nestlé Marks, and Defendant continues to use the Nestlé Marks with actual knowledge of infringing conduct.

63.     Plaintiffs have not consented to Defendant's use of the Nestlé Marks for any purpose, and neither NUSA nor SPN have consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

64.     By reason of Defendant's wrongful acts of infringement, Plaintiffs have suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Marks in the United States, and a loss of sales and/or market share, among other reasons.

65.     Further, by reason of Defendant's wrongful acts of infringement, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which they have no adequate remedy at law.

66.     If not restrained, Defendant will have unfairly derived and will continue to derive income, profits, gain and business opportunities as a result of its acts of infringement.

67.     By reason of the foregoing, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the infringing Nestlé Mexico Products to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, treble damages, disgorgement of Defendant's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## SECOND CAUSE OF ACTION

**False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)**

**Against Defendant**

68.     Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 67 above as if fully set forth herein.

69.     NUSA was granted an exclusive license of all rights, title, and interest in and to the Nestlé Marks in the United States and has an exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

70.     Defendant has, without authorization, imported, distributed, and sold in the United States products featuring the Nestlé Marks, which are products that are materially different from the NUSA Products authorized for U.S. sale by NUSA.

71.     Defendant's unauthorized importation, distribution, and sale of products bearing the Nestlé Marks that are materially different from the NUSA Products sold by NUSA in the United States places the nature and quality of products bearing the Nestlé Marks that are sold in the United States beyond the control of NUSA and deprives NUSA of the ability to control the same.

72.     Defendant's acts of false designation of origin and unfair competition are likely to cause, and have caused, confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with NUSA, and as to the origin, sponsorship, and/or approval of Defendant's goods, in that purchasers and others in the United States are likely to believe NUSA authorizes and controls the sale of Defendant's products, or that Defendant is associated with or is authorized by NUSA to distribute or sell products bearing the Nestlé Marks in the United States.

73.     Defendant's acts of false designation of origin and unfair competition have been committed deliberately and willfully, with knowledge of NUSA's exclusive rights and goodwill in the Nestlé Marks, and with knowledge of the infringing nature of the marks when used in connection with the diverted Nestlé Mexico Products. Defendant's acts have also been committed with bad faith and the intent to cause confusion or mistake and/or to deceive retailers and end consumers.

74.     Defendant had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Marks prior to Defendant's adoption and use of the Nestlé Marks, and Defendant continues to use the Nestlé Marks with actual knowledge of infringing conduct.

75.     Plaintiffs have not consented to Defendant's use of the Nestlé Marks for any purpose, and neither NUSA nor SPN have consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

76. By reason of Defendant's wrongful acts of unfair competition, Plaintiffs have suffered injury and damage, in an amount to be proven at trial, by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the Nestlé Marks in the United States, and a loss of sales and/or market share, among other reasons.

77. Further, by reason of Defendant's wrongful acts of unfair competition, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their rights in and to the Nestlé Marks, and damage to the goodwill associated therewith, for which they have no adequate remedy at law.

78. Defendant's acts of unfair competition are causing substantial harm to NUSA as an exclusive licensee of rights to sell products under the Nestlé Marks in the United States.

79. If not restrained, Defendant will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of unfair competition.

80. By reason of the foregoing, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116, for the infringing Nestlé Mexico Products to be destroyed pursuant to 15 U.S.C. § 1118, and to actual damages, treble damages, disgorgement of Defendant's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## THIRD CAUSE OF ACTION

### Trademark Dilution, 15 U.S.C. § 1125(c)

### Against Defendant

81. Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 80 above as if fully set forth herein.

82. NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

83.     The Nestlé Marks are famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

84.     The Nestlé Marks are widely recognized by the general consuming public of the United States as a designation of source of NUSA's goods, including the NUSA Products.

85.     The Nestlé Marks became famous source indicators for the NUSA Products long before Defendant commenced its infringing activities.

86.     Defendant's acts have diluted the Nestlé Marks in the United States by blurring their association with the NUSA Products and reducing purchasers' ability to identify and distinguish goods intended for different markets. In addition, Defendant's distribution and sale of goods intended for the Mexican market (which have different formulations, label information, and/or post-sale services than consumers expect) in the United States and Defendant's placement of unauthorized stickers in a manner that defaces the Nestlé Marks and fails to comply with relevant U.S. regulations have diluted the Nestlé Marks by tarnishment.

87.     Defendant had actual and constructive knowledge of NUSA's superior rights in and to the Nestlé Marks in the United States prior to Defendant's adoption and use of the Nestlé Marks in the United States, and Defendant continues to use the Nestlé Marks with actual knowledge of infringing conduct.

88.     Plaintiffs have not consented to Defendant's use of the Nestlé Marks for any purpose, and neither NUSA nor SPN have consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

89.     Defendant's acts have irreparably damaged Plaintiffs and will continue to do so unless restrained by this Court. Therefore, Plaintiffs are without an adequate remedy at law and are entitled to, among other relief, an order enjoining and restraining Defendant from diverting, distributing, and selling the Nestlé Mexico Products in the United States.

### **FOURTH CAUSE OF ACTION**

**Trademark Dilution, Cal. Bus. Prof. Code § 14247**

**Against Defendant**

90.     Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 89 above as if fully set forth herein.

91.     NUSA is the exclusive licensee of all rights, title, and interest in and to the Nestlé Marks in the United States and has the exclusive right to use the Nestlé Marks in the United States in connection with the NUSA Products.

92.     The Nestlé Marks are famous and distinctive within the meaning of California Business and Professions Code § 14247.

93.     The Nestlé Marks are widely recognized by the general consuming public of California as a designation of source of NUSA's goods, including the NUSA Products.

94.     The Nestlé Marks became famous source indicators for the NUSA Products long before Defendant commenced its infringing activities.

95.     Plaintiffs have not consented to Defendant's use of the Nestlé Marks for any purpose, and neither NUSA nor SPN have consented to the sale of the Nestlé Mexico Products bearing the Nestlé Marks in the United States market.

96.     Defendant's acts have diluted the Nestlé Marks in California and the United States by blurring their association with the NUSA Products and reducing purchasers' ability to identify and distinguish goods intended for different markets.

97.     Defendant's acts have further diluted the Nestlé Marks in California and the United States by tarnishing them, given the material differences between the NUSA Products and the Nestlé Mexico Products.

98.     Defendant's acts have irreparably damaged Plaintiffs and will continue to do so unless restrained by this Court. Therefore, Plaintiffs are without an adequate remedy at law and are entitled to, among other relief, an order enjoining and

restraining Defendant from diverting, distributing, and selling the Nestlé Mexico Products in the United States.

**FIFTH CAUSE OF ACTION**

**Unfair Competition, Cal. Bus. Prof. Code §§ 17200 et seq.**

**Against Defendant**

99.   Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 98 above as if fully set forth herein.

100.   Defendant has violated 15 U.S.C. § 1114 and California Business & Professions Code § 14245 by using the Nestlé Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of goods, in a manner likely to cause confusion, mistake, or deception, without the consent of the Nestlé Marks' registrant, *i.e.*, SPN.

101.   Defendant has also violated 15 U.S.C. § 1125(a) by using the Nestlé Marks in commerce in a manner likely to cause confusion, mistake, and deception as to the connection between Defendant and NUSA and as to the origin, sponsorship, or approval of Defendant's products for sale in the United States by Plaintiffs.

102.   Defendant has also violated 15 U.S.C. § 1125(c) and California Business & Professions Code § 14247 by using the Nestlé Marks in commerce in a manner likely to cause dilution by blurring and by tarnishment of the Nestlé Marks.

103.   Defendant has failed to comply with California Civil Code §§ 1798.8-1797.86, which require sellers and dealers of grey market goods to disclose incompatibilities and nonconformities with relevant domestic standards on their products and accompanying advertisements, among numerous other requirements.

104.   Defendant's marketing and advertisement of products with the Nestlé Marks in the United States, as alleged herein, was intended to and did mislead customers to purchase Nestlé Mexico Products from Defendant with the belief that such products were manufactured or distributed by, or authorized for manufacture or

distribution by, NUSA, in violation of California Business and Professions Code § 17500.

105.   This conduct, together with the Defendant's other acts alleged herein, constitute unfair, unlawful, and fraudulent business acts and practices under California Business and Professions Code § 17200, because such acts are forbidden by various state and federal laws and are unscrupulous, unfair, and injurious to Plaintiffs. Defendant's acts have irreparably damaged Plaintiffs and will continue to do so unless restrained by this Court, and Plaintiffs are without an adequate remedy at law.

106.   As a result of Defendant's wrongful conduct, Plaintiffs are entitled to, among other relief, an order enjoining and restraining Defendant from diverting, distributing, and selling the Nestlé Mexico Products in the United States and restoring to Plaintiffs funds that were wrongfully collected by Defendant.

## SIXTH CAUSE OF ACTION

### False Advertising, Cal. Bus. Prof. Code §§ 17500 et seq.

### Against Defendant

107.   Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 106 above as if fully set forth herein.

108.   Defendant has publically advertised for sale the Nestlé Mexico Products.

109.   Defendant knew, or reasonably should have known, that the Nestlé Mexico Products that it advertises are materially different from their corresponding NUSA Products. These differences include that the Nestlé Mexico Products are not properly labeled in compliance with FDA's regulations and guidance, the Nestlé Mexico Products may contain formulations not intended for the United States market, and the Nestlé Mexico Products are not subject to NUSA's quality control standards and post-sale services.

110. Defendant knew, or reasonably should have known, that it is not the owner of the Nestlé Marks, that Plaintiffs have not authorized Best Foods to sell Nestlé-trademarked products in the United States, and that Plaintiffs do not control, supervise, or otherwise endorse the Nestlé Mexico Products for sale in the United States.

111. Defendant knew, or reasonably should have known, that by advertising Nestlé Mexico Products that are substantially identical in appearance to their corresponding NUSA Products, consumers were likely to be misled and deceived into believing that the Nestlé Mexico Products are subject to NUSA's control, supervision, and endorsement. Defendant also knew, or reasonably should have known, that consumers were likely to be deceived into believing that the Nestlé Mexico Products are compliant with FDA's regulations, that they contain formulations intended for the U.S. market, and that they are subject to NUSA's quality control standards and post-sale services when this is not the case.

112. As a result of Defendant's advertising the Nestlé Mexico Products, Plaintiffs have suffered substantial and irreparable economic loss, including:

      (a)    lost sales, revenue, market share, and asset value;

      (b)    a diminution in the value of NUSA's contracts with its authorized distributors of NUSA Products;

      (c)    customer dissatisfaction; and

      (d)    a diminution of the value of the goodwill associated with the Nestlé Marks in the United States.

113. As a result of the Defendant's wrongful conduct, Plaintiffs are entitled to, among other relief, an order enjoining and restraining Defendant from advertising and selling the Nestlé Mexico Products in the United States and restoring to Plaintiffs funds that were wrongfully collected by Defendant.

## SEVENTH CAUSE OF ACTION

### Tortious Interference with Contractual Relations

### Against Defendant

114.   Plaintiffs incorporate and re-allege each and every allegation set forth in paragraphs 1 to 113 above as if fully set forth herein.

115.   NUSA sells its Products directly to retailers and through a network of authorized distributors that distribute NUSA Products throughout the United States, including in California. Each of these distributors separately enters into a contractual agreement with NUSA in order to distribute NUSA Products.

116.   These agreements provide NUSA's authorized distributors with certain rights and benefits—including, in some instances, the exclusive right to distribute NUSA products within a designated region or territory. By carefully evaluating and negotiating with its authorized distributors, NUSA ensures that its products are distributed by business partners that are similarly invested in developing and safeguarding the goodwill associated with the NUSA Products. Where NUSA's distributors fail to provide the high-quality services that NUSA expects, NUSA may take corrective measures.

117.   NUSA's contractual relationships with each of its existing authorized distributors benefited NUSA economically and likely would have continued to benefit NUSA economically in the future.

118.   Defendant was aware of NUSA's existing contractual relationships with its authorized distributors by virtue of its direct contact with those distributors, as well as its familiarity with the business of distributing and selling food and beverage products in the United States.

119.   Defendant intentionally interfered with those contractual relationships, and/or knew that the disruption of such contractual relationships was certain or substantially certain to occur, when it wrongfully used the Nestlé Marks and distributed and sold Nestlé Mexico Products in the United States without the

permission of Plaintiffs. These transactions have resulted and will continue to result in substantial losses to NUSA and its authorized distributors, disruptions to NUSA's contractual relationships with its authorized distributors, and the rights that NUSA has granted to those distributors. Defendant's conduct was a substantial factor in causing this harm to NUSA and its business partners.

120. As a result of Defendant's tortious interference with NUSA's contractual relationships, NUSA is entitled to, among other relief, damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs NUSA and SPN pray for judgment against the Defendant as follows:

1.    Preliminary and permanent injunctive relief against the Defendant and its officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them, from doing any of the following acts, either directly or indirectly:

(a)    Acquiring, transporting, distributing, developing, offering to sell, or selling any products bearing the Nestlé Marks in the United States that are not authorized for sale in the United States market, including, but not limited to, the Nestlé Mexico Products;

(b)    Using any of the Nestlé Marks or any other trademark owned by SPN and/or licensed to NUSA in connection with its business;

(c)    Otherwise infringing the Nestlé Marks or any other trademark owned by SPN and/or licensed to NUSA;

(d)    Causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of the NUSA Products or any other products manufactured, distributed, or sold by NUSA and/or that bear the Nestlé Marks;

(e)    Using any false designation of origin or false representation concerning the NUSA Products or any other products manufactured, distributed, or sold by NUSA and/or that bear the Nestlé Marks; and

(f)    Any acts of unfair competition or unfair practice affecting Plaintiffs, the NUSA Products, or any other products manufactured, distributed, or sold by NUSA and/or that bear the Nestlé Marks;

2.    For an order directing Defendant to file with this Court and serve on Plaintiffs within 30 days after service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

3.    For an order to destroy the Nestlé Mexico Products or any other products bearing the Nestlé Marks located in the United States in the possession of Defendant and its officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

4.    For an order seizing the Nestlé Mexico Products or any other products bearing the Nestlé Marks located in the United States in the possession of Defendant and its officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

5.    For an accounting and disgorgement of all of Defendant's profits resulting from its sale of the Nestlé Mexico Products and any other products bearing a Nestlé Mark in the United States;

6.    For an order awarding Plaintiffs damages in an amount to be determined, as well as treble damages, prejudgment and post-judgment

FIRST AMENDED COMPLAINT; CASE NO. 2:21-cv-02659-MCS-JPR

interest on their damages award, punitive damages, and Plaintiffs' reasonable attorneys' fees and costs of suit; and

7.    Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs NUSA and SPN demand a trial by jury of all issues so triable.


October 1, 2021                                     MAYER BROWN LLP


                                                   By: */s/ Dale J. Giali*
                                                        Dale J. Giali

                                                   Attorneys for Plaintiffs Nestlé USA, Inc. and Société des Produits Nestlé S.A.

FIRST AMENDED COMPLAINT; CASE NO. 2:21-cv-02659-MCS-JPR